FILED

01 NOV 20 PM 4:30

U.S. DISTR... ....RT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

JAMES B. POTTS, JR.,                          )
                                              )
            Plaintiff,                        )
                                              )
vs.                                           )        Civil Action No. CV-01-S-1975-NE
                                              )
MORCAP, INC., PINNACLE DATA                   )
CORPORATION,                                  )
                                              )
            Defendants.                       )

ENTERED

NOV 2 0 2001

## MEMORANDUM OPINION

This action is before the court on the motion to dismiss filed by defendant Pinnacle Data

Corporation pursuant to Federal Rule of Civil Procedure 12(b)(6), for plaintiff's failure to state

claims upon which relief can be granted. Upon review of the pleadings, briefs, motions, and oral

argument, this court instead is of the opinion that this action must be remanded *sua sponte*, as a

result of defendant's failure to substantiate this court's subject-matter jurisdiction over plaintiff's

claims, pursuant to 28 U.S.C. § 1441(a).

### I. STATEMENT OF FACTS

Plaintiff, James B. Potts, Jr., closed on the purchase of a house and lot located at 827

Esslinger Road in Huntsville, Alabama on September, 18, 1998.[1] Defendant Morcap, Inc.

("Morcap") was the mortgage lender for the transaction, while defendant Pinnacle Data Corporation

("Pinnacle") was the company retained by Morcap to provide a "Standard Flood Hazard

Determination" for the property.[2] Pinnacle completed its flood zone assessment on September 16,

---

[1] Complaint ¶ 6. This property is more accurately described as Lot 22, Block 2, Willowbrook Subdivision 5th Addition, as described in Plat Book 5, Page 122, Probate Records of Madison County, Alabama. *Id.*

[2] *Id.* ¶¶ 7, 8.

1998.[3]  Morcap sent a "Notice to Borrower Regarding Flood Insurance" the same day, which stated

that the property plaintiff proposed to purchase was not in a "Special Flood Hazard Area,"[4] the effect

of which was to enable plaintiff to acquire the property without purchasing a flood insurance policy.

According to plaintiff, the property in fact was located in a flood hazard area, and his new home was

subsequently damaged by floods in June of 1999.[5]

Plaintiff claims that defendants negligently, wantonly, or fraudulently represented to him that

his home was not located in a flood hazard zone, or suppressed the fact that it was.[6]  Plaintiff asserts

that he relied on that representation (or suppressed material fact) when deciding to close on the

purchase of the property, and in not acquiring flood insurance.[7]

Plaintiff filed suit against defendants in the Circuit Court of Madison County, Alabama on

June 28, 2000, seeking to recover for the flood damage to his home, the decreased market value of

his property, personal injury, and mental anguish.[8]

Defendant Pinnacle removed the case to this court on August 6, 2001, on the dual basis of

federal question and diversity jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and

42 U.S.C. § 4001 *et seq*.  Defendant Morcap still has not joined in Pinnacle's petition for removal.

Pinnacle subsequently withdrew that "portion of its Notice of Removal based upon federal question

jurisdiction," but continues to assert that this court "retains jurisdiction on the basis of federal

---

[3] *Id.* ¶ 8.

[4] *Id.* ¶ 9.  Defendants explain that an SFHA is an area within a flood plain that has a one percent or greater chance of flood occurrence in any given year.  Notice of Removal at 2.  Federal Emergency Management Agency ("FEMA")  maps demarcate these SFHAs within dark, shaded areas, and with a zone designation of "A" or "V."  *Id.* at n.2.

[5] Complaint ¶¶ 11, 12.

[6] *Id.*

[7] *Id.* ¶ 15.

[8] *Id.* ¶ 12.

2

diversity," pursuant to 28 U.S.C. § 1332.[9]  This court therefore considers whether defendants' removal of this action was proper.

## II. DISCUSSION

### A.    Defendants' Unanimous Consent to Removal

Removal of actions instituted in state court implicates fundamental concerns of state sovereignty and federalism.  As one distinguished commentator has noted, "[i]t is quite an anomalous jurisdiction, giving a defendant, sued in a court of competent jurisdiction, the right to elect a forum of his own choosing." Charles Alan Wright, *The Law of Federal Courts* § 38, at 209 (4th ed. 1983).  Accordingly, removal statutes are strictly construed.  *See Miles v. Kilgore*, 928 F. Supp. 1071, 1075 (N.D. Ala. 1996) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Fitzgerald v. Seaboard System R.R., Inc.*, 760 F.2d 1249 (11th Cir. 1985)).  Any civil action brought in a state court may be removed, provided the district court has original jurisdiction of the controversy.  *See* 28 U.S.C. § 1441(a); *Ayres v. General Motors Corp.*, 234 F.3d 514, 517 (11th Cir. 2000).  "[T]he burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001) (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). This burden requires the removing defendant to comply with the "unanimity rule":  that is, to demonstrate, pursuant to 28 U.S.C. § 1446(b), that all defendants properly joined and served have consented to removal. *See Russell Corp. v. American Home Assurance Co.*, No. 00-13934, 2001 WL 1019114 (11th Cir. Sept. 6, 2001); *In re Federal Savings and Loan Insurance Corporation*, 837 F.2d

---

[9] Defendant's Supplemental Memorandum of Law at 2.

432, 434 n.2 (11th Cir. 1988) (citing cases); *Miles*, 928 F. Supp. at 1076 (same).  Consent must be deliberate; courts will not permit the "mere bald, unsupported assertion in a notice of removal by one removing defendant that all the other defendants consent to the removal."  *Miles*, 928 F. Supp. at 1076.

This court confronts the unusual case of the first-served defendant who has removed the case on the thirtieth (and last) day of the removal period, coincidentally the same day on which the second defendant was properly served.  Pinnacle admits that it was served by certified mail on July 6, 2001.[10]  Service upon defendant Morcap was attempted by certified mail on June 29, 2001, but the process was returned as insufficient on July 10, 2001.[11]  Independent review of the public records maintained by the Clerk of the Madison County, Alabama Circuit Court evidences that Morcap was eventually and properly served on August 6, 2001.  Meanwhile, defendant Pinnacle filed its notice of removal on that same date, although it admitted therein that Pinnacle had "been unable to contact Morcap to obtain its consent to removal."[12]

The Eleventh Circuit and the Supreme Court appear not to have addressed the specific circumstances before this court, namely the responsibility of the later-served defendant to consent to an earlier-served defendant's notice of removal.  The Fourth Circuit has held, however, that "individual defendants have thirty days from the time they are served with process or with a complaint to join an otherwise valid removal petition."  *McKinney v. Board of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992); *see also Griffith v. American Home Products Corp.*, 85 F. Supp. 2d 995, 1000 (E.D. Wash. 2000) (stating that "a defendant served *within*

---

[10] Notice of Removal ¶ 2.

[11] *Id.*

[12] *Id.* ¶ 29.

4

the first-served defendant's removal period has thirty days to decide whether to join the first-served defendant's petition for removal.") (emphasis supplied). In *McKinney*, the Fourth Circuit confronted the spectre of twelve defendants, three of whom were served on the same day, eight others who were served twenty-four days later, and a single defendant who was served after the notice of removal had been filed. 955 F.2d at 925. One defendant who had been served on the twenty-fourth day of the removal period failed to join in the petition for removal. On those facts, similar to the ones before this court, the Fourth Circuit ruled that the later-served defendant who failed to join the petition for removal had thirty days to consent to the pending removal peition. *Id.* at 928. The court offered as its rationale that:

> the rights of defendants generally could be rather easily overcome by tactical maneuvering by plaintiffs. *Suppose, for example, plaintiff serves defendant A, thus starting the thirty-day period running, and then maneuvers to serve defendant B late on the thirtieth day.* Obviously B is unlikely to rush to the courthouse door before it closes to file his joinder of A's removal petition; he is unlikely to even realize what is happening to him before it is too late. (There is nothing on the summons form such a defendant would receive — which of course would be a summons to state, not federal, court — that would tell him the rules for removal to federal court, or warn him that he might have much less than thirty days to join in a removal petition). This cannot be what Congress had in mind. Congress created the removal process to protect defendants. It did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.[13]

*McKinney*, 955 F.2d at 928 (emphasis supplied).

Because Morcap was served on the thirtieth day of Pinnacle's removal period, Morcap was served *within* the allowable removal period. *See Griffith*, 85 F. Supp. 2d at 1000. As a result, this court finds that Morcap had thirty days to consent to Pinnacle's notice of removal. As of this date, however, Morcap still has made no response whatsoever to Pinnacle's removal notice. As such, this

---

[13] This court does not intimate that plaintiff "maneuvered" to have Morcap served on the final day of Pinnacle's removal period.

court does not have the complete consent of all defendants in this action to removal pursuant to 28 U.S.C. § 1446(b).

Even so, the Eleventh Circuit has characterized a defendant's failure to obtain unanimous consent of all defendants a "defect in the removal process." *In re: Bethesda Memorial Hospital, Inc.*, 123 F.3d 1407, 1410 (11th Cir. 1997). Remand based on this procedural defect is proper either in response to a plaintiff's motion to remand, or on a *sua sponte* order by the court, but either method must be initiated within thirty days after the filing of the notice of removal. 28 U.S.C. § 1447(c). Defendant Pinnacle filed its notice of removal on August 6, 2001. To date, plaintiff has not filed a motion to remand, and in fact "do[es] not contest the jurisdiction of this Court."[14] In addition, the thirty day time frame within which this court could *sua sponte* order this case remanded to state court has passed. *See In re Bethesda Memorial Hospital, Inc.*, 123 F.3d at 1410-11 (reversing the remand order of a district court handed down thirty-four days after the filing of the removal petition). As such, the fact that all defendants have not consented to removal is not fatal to this court's jurisdiction.

**B.      Defendants' Burden on Removal to Demonstrate the Statutorily Required Amount in Controversy**

Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *see also, e.g., Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 1720, 135 L.Ed.2d 1 (1996); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983); *First*

---

[14] Plaintiff's Letter Brief dated October 15, 2001 at unnumbered page 1.

*Franklin Financial Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir. 1998); *Lops v. Lops*, 140 F.3d 927, 942 (11th Cir. 1998). As a preliminary matter, however, that proposition begs the question: does this court have subject matter jurisdiction over the underlying controversy?

Defendant Pinnacle has conceded that this court does not have federal question jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 4001 *et seq.*; thus, this court must have proper diversity jurisdiction under 28 U.S.C. § 1332(a)(1) for the case to remain in federal court. This court considers the jurisdictional question *sua sponte*, because "it is the duty of the court to determine on its own motion whether it has jurisdiction of any case before it." *Kutner v. Kutner*, 656 F.2d 1107, 1110 (5th Cir. 1981);[15] *see also, e.g., Employers Mutual Casualty Co. v. Evans,* 76 F. Supp. 2d 1257, 1259 (N.D. Ala. 1999) ("[A] federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

> Federal courts are proper forums for the resolution of serious and substantial federal claims. They are frequently the last, and sometimes the only, resort for those who are oppressed by the denial of the rights given them by the Constitution and laws of the United States. Fulfilling this mission and the other jurisdiction conferred by acts of Congress has imposed on the federal courts a work load that taxes their capacity. Each litigant who improperly seeks federal judicial relief for a petty claim forces other litigants with more serious claims to await a day in court. When litigants improperly invoke the aid of a federal court to redress what is patently a trifling claim, the district court should not attempt to ascertain who was right or who was wrong in provoking the quarrel but should dispatch the matter quickly.

*Raymon v. Alvord Independent School District*, 639 F.2d 257 (5th Cir. 1981).

Here, plaintiff seeks compensatory and punitive damages for defendants' alleged breach of contract, negligence, wantonness, fraud, and suppression of material facts.[16] The complete diversity

---

[15] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[16] Under Alabama law, punitive damages generally are *not* recoverable for a breach of contract. *See generally* Jennelle Mims Marsh & Charles W. Gamble, Alabama Law of Damages §§ 4-6, 17-1, 27-6 (4th ed. 1999).

requirement of § 1332(a)(1) is satisfied, as plaintiff is a resident of Madison County, Alabama,[17] Pinnacle is a corporation organized under the laws of California, with its principal place of business in Austin, Texas, and Morcap allegedly is a corporation organized under the laws of Delaware, with its principal place of business in Georgia.[18] Only the amount in controversy requirement embodied in § 1332(a) is uncertain.[19] This is because plaintiff does not demand a specific amount of damages in his complaint, but instead asks that a jury award him a "sum sufficient to compensate him for his damages, punitive damages and the costs of this action."[20] The amount in controversy is further uncertain because defendant Pinnacle makes only a conclusory assertion in its notice of removal that "[t]he amount of controversy exceeds $75,000, exclusive of interest and costs, thereby meeting the requirements of 28 U.S.C. § 1332(a)."[21]

The ambiguity of the amount in controversy is of importance, because the jurisdiction of this court is limited: federal courts have the power to hear and determine only those cases authorized by the Constitution or Congress. *See, e.g., Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092 (11th Cir. 1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377, 114 S.Ct. at 1675 (citation omitted); *see also Tapscott*, 77 F.3d at 1356. In light of these limitations on federal court jurisdiction, the Eleventh Circuit favors remand to the state court when

---

[17] Complaint ¶ 1.

[18] Notice of Removal ¶ 20, 21.

[19] 28 U.S.C. § 1332(a) awards original jurisdiction to the district courts over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs...."

[20] Complaint at 2-3.

[21] Notice of Removal ¶ 23.

removal jurisdiction is not absolutely clear.  In essence, "[r]emoval statutes are to be strictly construed, with all doubts resolved in favor of remand." *Lowe's OK'd Used Cars, Inc. v. Acceptance Insurance Co.*, 995 F. Supp. 1388,  (M.D. Ala. 1998) (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)); *see also Burns*, 31 F.3d at 1095.

Where a plaintiff has specifically claimed *less than* the jurisdictional amount in his state court complaint, the removing defendant must show to a "legal certainty" that the plaintiff would not recover less than $75,000, if he prevailed. *Burns*, 31 F.3d at 1095.

> The rationale is that although a defendant has a right to remove in certain cases, a plaintiff is still master of her own claim. ...  Noting an attorney's twin duties to investigate his client's case and be candid with the court, we reasoned that a pleading containing a specific demand of damages and signed by a lawyer was due deference and a presumption of truth. ...  We concluded the defendant's burden was a "heavy one" and the legal certainty standard was therefore appropriate.  ...  Any lesser burden would impermissibly expand federal diversity jurisdiction. ...

*Tapscott*, 77 F.3d at 1356 (citing *Burns*, 31 F.3d at 1095-97).[22]

Alternatively, where, as here, a plaintiff has made an *unspecified demand* for damages, the Eleventh Circuit instructs that the "proper balance between a plaintiff's right to choose his forum and a defendant's right to remove, without unnecessarily expanding federal diversity jurisdiction, is struck by a *preponderance of the evidence standard*," and a "low[] burden of proof is warranted

---

[22] The *Tapscott* Court elaborated on defendant's burden further, relying on the Sixth Circuit's decision in *Gafford v. General Electric Co.*:

> It does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement.  Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages.  On the other end of the spectrum, requiring the defendant to prove that the amount in controversy "may" meet the federal requirement would effectively force the plaintiff seeking remand to prove in rebuttal that only a relatively small amount of damages is legally possible.

*Tapscott*, 77 F.3d at 1357 (quoting *Gafford v. General Electric Co.*, 997 F.2d 150, 159 (6th Cir. 1993) (footnote omitted)).

because there is simply no estimate of damages to which a court may defer." *Tapscott*, 77 F.3d at 1357 (emphasis supplied).  Plainly stated, then:

> [i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists. *See Tapscott*, 77 F.3d at 1356. *Where the plaintiff has not plead a specific amount of damages, ... the defendant is required to show ... by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied. See id.* at 1357.

*Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001) (emphasis supplied); *see also Hitch v. Laws*, No. Civ.A. 00-0226 PS, 2000 WL 1005888, at *2 (S.D. Ala. June 27, 2000) (same); *Fuller v. Exxon Corp.*, 78 F. Supp. 2d 1289, 1298 (S.D. Ala. 1999) (same); *Employers Mutual Casualty Co.*, 76 F. Supp. 2d at 1259-60 (same); *Lowe's OK'd Used Cars, Inc.*, 995 F. Supp. at 1389 (same); *Bolling v. Union National Life Insurance Co.*, 900 F. Supp. 400, 404 (M.D. Ala. 1995) (relying on decisions from the Fifth, Sixth and Ninth Circuits).

How then does defendant meet this burden?  The Eleventh Circuit recently addressed this question in *Williams v. Best Buy Co., Inc.*, No. 00-11829, 2001 WL 1244759 (11th Cir. Oct. 18, 2001).  The plaintiff in *Williams* had made a demand for general, special, and punitive damages in unspecified amounts; defendant Best Buy removed the action to the U.S. District Court for the Northern District of Georgia on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, 1441.  The *Williams* Court considered *sua sponte* the propriety of the districts court's diversity jurisdiction, because the notice of removal — as in this case — made only a conclusory assertion that the amount in controversy was a "sum in excess of $75,000.00." *Id.* at *1.  The court emphasized that "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement,"[23] but acknowledged that the Eleventh

---

[23] *Williams*, 2001 WL 1244759, at *2 (citing *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th

Circuit had "not explicitly articulated the proper procedure for determining the amount in controversy on removal." *Id.* at *2. Prior to its decision in *Williams*, the Eleventh Circuit had "suggested" that "a district court may properly consider post-removal evidence in determining whether the jurisdictional amount was satisfied at the time of removal." *Id.* (citing *Sierminski v. Transouth Finance Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)). The *Williams* Court explicitly adopted the *Sierminski* approach, along with the Ninth and Fifth Circuit's treatment of this issue:

> We now make explicit what we suggested in *Sierminski* and adopt the approach of the Fifth and Ninth Circuits. When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. *If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the controversy at the time the case was removed.* ... We reiterate that the burden of proving jurisdiction lies with the removing defendant. *A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden.* ...

*Id.* at *3 (emphasis supplied) (citations omitted).

It is not facially apparent from the face of plaintiff's complaint that the amount in controversy exceeds $75,000. In the event of such inadequate pleadings, this court "may review the record to find evidence that diversity jurisdiction exists." *Id.* (citing cases). While plaintiff's claim *could* produce more than $75,000, because he demands compensatory and punitive damages,[24] it nevertheless remains unclear following a review of the record whether this case involves the requisite amount in controversy to sustain this court's subject-matter jurisdiction.

Pinnacle's initial showing on the issue of the jurisdictional threshold is a bald, conclusory

---

Cir. 2001)).

[24] Complaint at 4; *see also Williams*, 2001 WL 1244759, at *4.

statement: "[t]he amount in controversy exceeds $75,000, exclusive of interest and costs, thereby

meeting the requirements of 28 U.S.C. § 1332(a)."[25]  Plaintiff has not challenged this statement,

stating that he is "happy with defendant Pinnacle Data's assertion that 'The Jurisdictional Amount

Exceeds $75,000.'" (Quizzically, however, plaintiff then adds this statement: *"Levity aside*, the

position of the defendant that plaintiff did not file a motion to remand is correct, and plaintiff does

not assert such a position now."[26])

Even so, the parties cannot confer subject-matter jurisdiction on a federal court by consent,

agreement, or waiver. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de

Guinee*, 456 U.S. 694, 701-02, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982);[27] *American Fire &

Casualty Co. v. Finn*, 341 U.S. 6, 17-18 & n.17, 71 S.Ct. 534, 542 & n.17, 95 L.Ed. 702 (1951);

*Raymon v. Alvord Independent School District*, 639 F.2d 257 (5th Cir. 1981) ("However eager the

suitors may be to litigate in federal court, they cannot confer jurisdiction by consent.").

---

[25] Notice of Removal ¶ 23.

[26] Plaintiff's Letter Brief dated October 15, 2001 at unnumbered page 1 (emphasis supplied).

[27] In *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the Supreme Court held that:

> Federal courts are courts of limited jurisdiction.  The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1.  Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction.  Again, this reflects the constitutional source of federal judicial power: Apart from this Court, that power only exists "in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, § 1.

> Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign.  Certain legal consequences directly follow from this.  For example, no action of the parties can confer subject-matter jurisdiction upon a federal court.  Thus, the consent of the parties is irrelevant, ..., principles of estoppel do no apply, ..., and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.  Similarly, a court, including an appellate court, will raise lack of subject-matter jurisdiction on it own motion. ...

*Id.* at 701-02, 102 S.Ct. at 2104 (case citations omitted).

Further, mere conclusory allegations will not satisfy this court that removal jurisdiction is proper. *See, e.g., Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992). The Supreme Court announced this principle in *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936):

> The authority which the statute vests in the court to enforce the limitations of its jurisdiction *precludes the idea that jurisdiction may be maintained by mere averment* or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. *And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.*

*See id.* at 189, 56 S.Ct. at 785 (emphasis supplied).

Nothing in the record presented to this court discloses the value of the claim asserted by plaintiff. The court is not even told the amount plaintiff paid for the subject property in 1998. On the other hand, defendant did offer argument in its Notice of Removal to the following effect:

> A survey of Alabama cases involving allegations of fraud such as here discloses verdicts far in excess of $75,000. *See Sperau v. Ford Motor Co.*, 674 So. 2d 24 (Ala. 1995), *vacated on other grounds*, 517 U.S. 1217 (1996), *aff'd on same grounds*, 708 So. 2d 111 (Ala. 1995), *cert. denied*, 188 S.Ct. 1519 (1998) (remitting verdicts to two plaintiffs to $200,000 and $500,000 respectively in fraud case). *See also First Commercial Bank v. Spivey*, 694 So. 2d 1316 (Ala. 1997) (upholding $500,000 compensatory award consisting primarily of mental anguish); *Duckhead Apparel Co. v. Hoots*, 659 So. 2d 897 (Ala. 1995) (upholding awards for mental anguish of $2 million, $1 million and $500,000 for three plaintiffs); *Land & Assocs. v. Simmons*, 562 So. 2d 140 (Ala. 1989) (remitted to $600,000 in fraud case); *American Pioneer Life Ins. Co. v. Sandlin*, 470 So. 2d 657 (Ala. 1985) ($3,000,000 in a fraud case).[28]

The problem with such "proof" is that it does not inform this court whether there is any comparability between the facts of the cases cited by defendant and the present controversy. This

---

[28] Notice of Removal ¶ 28.

13

court has no doubt that Alabama state court actions involving fraud or mental anguish claims, for example, have resulted in jury verdicts well in excess of $75,000: the cases cited by defendant establish that point well enough. That is *not* the issue, however. The question is whether the underlying facts of *this claim* are such that it reasonably may be concluded by a preponderance of the evidence that the amount in controversy exceeds the present jurisdictional threshold of $75,000. On that question, the record is wholly silent.

Once a review of the record is complete, it is the job of the district court to make factual findings on the amount in controversy. According to the Eleventh Circuit,

> where the notice of removal asserts the jurisdictional amount and the plaintiff does not challenge that assertion in the district court, *we will remand the case to the district court for factual findings on the amount in controversy if the amount in controversy cannot be clearly determined by a review of the record.*

*Williams*, 2001 WL 1244759, at *4 (emphasis supplied). This court "may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* at *2 (quoting *Sierminski*, 216 F.3d at 949 (quoting, in turn, *Allen*, 63 F.3d at 1335-36)). In fact, defendants are permitted to submit such evidence in support of a notice of removal, without being instructed to do so by the court. *See, e.g., Fowler v. Safeco Insurance Co. of America*, 915 F.2d 616, 617 (11th Cir. 1990) ("Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal.") (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) ("Both parties may submit affidavits and deposition transcripts.") (citing *B., Inc.*, 663 F.2d at 549), *superseded by statute as stated in Wilson v. General Motors Corp.*, 999 F.2d 779, 782 n.3 (11th Cir. 1989); *B., Inc.*, 663 F.2d at 549 ("In support of their removal petition, the defendants may submit affidavits and

14

deposition transcripts ....").

In addition, other federal courts have looked to relevant case law from either the state jurisdiction in which the action originally was filed, or the federal district to which the case was removed, relying both on cases with similar facts[29] and suits of the same actual type.[30] This court finds the detailed analysis by the Middle District of Alabama persuasive on this issue:

> 28 U.S.C. § 1441(a) states that an action may be removed by the defendant "to the district court of the United States for the district or division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Because of the nature of the court's analysis, however, an analysis based on an examination of cases arising out of the Alabama Judicial Circuit from where the action was removed may be more accurate. Alabama is divided into judicial circuits compromising one or more counties. Ala.Code § 12-11-2 (1975). Juries are drawn from lists of the residents of counties or territorial subdivisions thereof. Ala.Code §§ 12-16-44, 57 (1975). Because jury pools are limited in geographical scope, damage awards in the "same type of suit" may differ from judicial circuit to judicial circuit. Jury awards in the judicial circuit from where the action at issue was removed, therefore, may more accurately instruct the court's analysis than an examination of jury awards from other judicial circuits or from judicial circuits encompassed by a federal judicial district or division.
>
> An examination of damage awards in "similar type" diversity cases successfully removed to the federal district or division encompassing the judicial circuit of origin of the state action may be examined as well. Because the jury pools for the federal district or division and the state judicial circuits therein could overlap, an analysis of federal and state cases originating within the geographical region encompassed by the federal district or division would be appropriate because of this overlap. In other words, the court could examine damage awards in the particular judicial circuit from which the particular action was removed, as well as damage

---

[29] *See, e.g., Walker Petroleum v. CSX Transportation, Inc.*, No. Civ.A.1:01-0021-RV-C, 2001 WL 102359, at *1 (S.D. Ala. Jan. 12, 2001); *Hitch*, 2000 WL 1005888, at *2 (citing *Lowe's OK'd Used Cars, Inc. v. Acceptance Insurance Co.*, 995 F. Supp. 1388, 1392-93 (M.D. Ala. 1998)); *Employers' Mutual Casualty Insurance Co.*, 76 F. Supp. 2d at 1260.

[30] *See, e.g., Hitch*, 2000 WL 1005888, at *3; *Bolling*, 900 F. Supp. at 404-05. Some courts outside the Eleventh Circuit have looked outside their own jurisdictions in examining similar types of cases. *See, e.g., De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993) (relying on "other courts" and "other forums") (citing for support *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992); and *Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753, 763 (E.D.Mich.1990)); *Haisch v. Allstate Insurance Co.*, 942 F. Supp. 1245, 1249 (D. Ariz. 1996) (engaging in state-wide and extra-state analysis); *Gilmer v. Walt Disney Co.*, 915 F. Supp. 1001, 1005 (W.D. Ark. 1996) (citing to *Bolling*).

> awards in federal diversity cases from the district or division encompassing the judicial circuit from which the particular action was removed. After all, the court is only determining whether the defendant has met the preponderance — more likely than not — burden of showing that the jurisdictional amount in controversy prerequisite has been met. And, the same relatively low burden may allow for consideration of damage awards rendered state-wide or even from other jurisdictions, (i.e. neighboring judicial circuits in different states), rendering this entire discussion moot.

*Lowe's OK'd Used Cars, Inc.*, 995 F. Supp. at 1392 n.4 (considering the type of evidence that defendant should offer in order to meet the preponderance burden for removal jurisdiction). Finally, courts will consider any evidence that a plaintiff offers to rebut the defendant's argument for removal jurisdiction.[31]

In an effort to make such factual findings, this court asked counsel for defendant Pinnacle during an October 3, 2001 motion docket to submit evidence substantiating that the amount in controversy exceeded $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332(a). While defendant Pinnacle could have submitted a range of summary-judgment-type evidence in order to make this showing, Pinnacle instead offers this court only a number of decisions of the Alabama Supreme Court, all of which allegedly involve similar claims from the same judicial district.[32] In fact, only one of these cases involved similar facts.

Defendants offer just one case that involves allegations by the plaintiffs that "defendants misrepresented or suppressed an existing flood hazard, that the [plaintiffs] consequently bought the homes, and that floods damaged the homes." *Cooper & Co. v. Lester*, No. 1981368, 2000 WL 1868433, at *1 (Ala. Dec. 22, 2000). *Cooper* is an unpublished decision of the Alabama Supreme

---

[31] *See, e.g., Fuller*, 78 F. Supp. 2d at 1298; *Lowe's OK'd Used Cars, Inc.*, 995 F. Supp. at 1393; *see also, e.g. De Aguilar*, 11 F.3d at 57.

[32] Pinnacle's Supplemental Memorandum of Law at 3.

16

Court, which was appealed from the Mobile County Circuit Court.[33] The *Cooper* plaintiffs were four couples who had purchased homes in the Sunchase subdivision, and later sued the real estate agency and its agents, among others, for suppressing and/or misrepresenting material facts about storm water flooding from a local creek. *Cooper*, 2000 WL 1868433, at *1. Defendants there were found to have had knowledge of the flooding conditions in the Sunchase subdivision prior to the sales of the homes to plaintiffs, and to have failed either to disclose and/or directly misrepresented to plaintiffs that the properties had a known flooding problem. *See id.* at *2. The Alabama Supreme Court affirmed punitive damage awards in favor of three of the four plaintiffs, upon the acceptance of a remittitur, for $178,538, $191,663, and $229,380, respectively. *Id.* at *17.

Although similar, *Cooper* and the case at issue here are nevertheless distinguishable on their facts. The *Cooper* plaintiffs alleged that the real estate agents who sold them their homes had knowledge of the flooding hazards, but affirmatively denied that the homes were susceptible to flood damage in order to induce the plaintiffs to purchase the homes. *Id.* at *1. Plaintiff Potts claims that, in purchasing his home and in declining to purchase flood insurance, he relied on a Standard Flood Hazard Determination commissioned by his lender that reported that his new residence was not located in a Special Flood Hazard Area.[34] The Determination did state, however, that "Federal Flood insurance is available" on plaintiff's property.[35] In light of this finding, defendant Morcap wrote plaintiff in a "Notice to Borrower Regarding Flood Insurance" that his property was not located in a Special Flood Hazard Area, and that "flood insurance is not a requirement of your loan

---

[33] Mobile County is located within the Southern Division of the Southern District of Alabama. 28 U.S.C. § 81(c)(2).

[34] Plaintiff's Exhibit A to the Complaint.

[35] *Id.*

17

at this time."[36] As defendants have noted, a Special Flood Hazard Area designates properties within a flood plain that have a one percent or greater chance of flood occurrence in any given year.[37] Whereas the plaintiffs in *Cooper* were told by their real estate agents that there was *no* flooding problem on the properties at issue there, plaintiff here was told only that there was a *less than one percent chance* of his property flooding, and that he was not *required* to buy flood insurance, although it was nevertheless available to him.

Under the preponderance of the evidence standard, defendant Pinnacle must make a showing that the "fact to be proved is more probable than not," *Gardner v. Wilkinson*, 643 F.2d 1135, 1137 (5th Cir. 1981),[38] or that the "greater weight of the evidence" demonstrates that the amount in controversy here exceeds $75,000. *St. Laurent v. Ambrose*, 991 F.2d 672, 677 (11th Cir. 1993). The Eleventh Circuit's *Pattern Jury Instructions* define this standard as "the amount of evidence that is enough to persuade [the fact finder] that a claim or contention is more likely true than not true."[39] Pinnacle cannot use a single, factually similar, but distinguishable decision to satisfy its burden on this issue.

Pinnacle does offer other case law to support this court's jurisdiction. As to plaintiff's fraud claim, defendant proffers *Third Generation, Inc. v. Wilson*, 668 So. 2d 518 (Ala. 1995), as a factually similar action involving fraud in which the Alabama Supreme Court affirmed a damage award in excess of $75,000. While *Wilson* was appealed from the Madison County, Alabama Circuit Court, the same jurisdiction at issue here, *Wilson* in fact involved a fraud counterclaim brought by the

---

[36] Plaintiff's Exhibit B to the Complaint.

[37] *See supra* note 4.

[38] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[39] Eleventh Circuit Pattern Jury Instructions — Civil, *Basic Instruction* No. 6.2, at 23 (2000).

incorporators of a corporation who sued their attorney for fraud and breach of fiduciary duty for allegedly altering the articles of incorporation after the incorporators had signed them. *Id.* at 519-20.

Defendant also offers *Fraser v. Reynolds*, 588 So. 2d 448 (Ala. 1991). Although it also was appealed from the Madison County Circuit Court, *Fraser* involved fraudulent inducement claims by general and limited partners to recover losses they sustained after the partnership purchased limited partnership interests in an apartment complex. *Id.* at 448, 452.

Finally, defendant offers *Griggs v. Finley*, 565 So. 2d 154 (Ala. 1990). *Griggs* also was appealed from the Madison County Circuit Court; plaintiffs there recovered $70,000 in compensatory damages and $100,000 in punitive damages, because the defendants had fraudulently represented that the property the plaintiffs purchased from them was on a public road, would support a septic tank system, and that a portion of the property would be deeded to them once the defendants completed the sale of an adjacent property. *Id.* at 156.

None of the fraud cases submitted by defendant Pinnacle on this issue are so factually similar to the instant case to warrant a finding that defendant has demonstrated by a preponderance of the evidence that the amount in controversy on plaintiff's fraud claim exceeds $75,000.

On the issue of wantonness, defendant Pinnacle proffers decisions of the Alabama Supreme Court as evidence of its argument that the amount in controversy exceeds $75,000. The first of these is *ConAgra v. Turner*, 776 So. 2d 792 (Ala. 2000), which was appealed from Morgan County Circuit Court.[40] *Turner* involved a worker's compensation claimant's retaliatory discharge action against his employer, in which the plaintiff had to prove "by clear and convincing evidence, oppression, fraud, malice or wantonness" in order to recover punitive damages. *Id.* at 794. Defendant here also

---

[40] Morgan County is located in the Northern District of Alabama's Northeastern Division. 28 U.S.C. § 81(a)(2).

offers *K-Mart Corp. v. Peak*, 757 So. 2d 1138 (Ala. 1999), which was appealed from the Cullman County Circuit Court.[41]  The claimant in *Peak* brought a premises liability suit after he became trapped in the automatic doors at defendant K-Mart's store in Cullman, Alabama. *Id.* at 1138-39. Again, neither of these cases is so factually similar to the present action as to justify a finding that defendant has demonstrated the appropriate amount in controversy by a preponderance of the evidence.

Defendant Pinnacle also offers decisions in which the Alabama Supreme Court has affirmed damage awards for mental anguish relating to a claimant's home in excess of the amount in controversy required by 28 U.S.C. § 1332(a).  None of these decisions either comes from the same Alabama judicial circuit, or has facts similar to the action currently before this court.  For example, defendant offers *Horton Homes, Inc. v. Brooks*, No. 1000346, 2001 WL 792730 (Ala. July 13, 2001), which was appealed from the Elmore County Circuit Court.  The *Brooks* plaintiff brought various breach of warranty, wanton repair and mental anguish claims after he purchased a manufactured home that developed numerous plumbing and structural problems. *Id.* at *1.

Defendant next offers *Prudential Ballard Realty Co. v. Weatherly*, 792 So. 2d 1045 (Ala. 2000), which was appealed from the Lowndes County Circuit Court.  The *Weatherly* plaintiffs claimed that defendants, who were responsible for listing plaintiffs' home for sale, had fraudulently misrepresented that the purchasers of plaintiffs' home had obtained financing on the home.  The plaintiffs there relied on that misrepresentation and purchased another home; a jury awarded mental anguish damages for the period during which plaintiffs owned both homes. *Id.* at 1047.

---

[41] Cullman County is located in the Northern District of Alabama's Northeastern Division. 28 U.S.C. § 81(a)(2).

20

Finally, defendant Pinnacle offers *First Commercial Bank v. Spivey*, 694 So. 2d 1316 (Ala. 1997), which was appealed from the Jefferson County Circuit Court. In *Spivey*, the borrowers sued the bank alleging fraud, breach of contract, and breach of fiduciary duty, after the bank allegedly induced the borrowers to execute the loan and mortgage agreements. *Id.* at 1318. The borrowers claimed that the bank had represented that they would be able to use the proceeds from the loan to pay for construction on their residence, when in fact the bank used much of the loan to repay the husband's unsecured business-related loans. *Id.* at 1318-19. Once again, none of these cases is so factually similar to the present controversy as to lead this court to find that defendant Pinnacle has met its burden of proof on the amount in controversy issue.

For all of the foregoing reasons, this court finds that defendant has failed to demonstrate that this court's removal jurisdiction is proper. An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 20th day of November, 2001.

United States District Judge

21